**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

STEADFAST INSURANCE CO.,               )
                                       )
                          Plaintiff,   )      Case No. 2:10-cv-00312-PMP-GWF
                                       )
vs.                                    )      **FINDINGS AND**
                                       )      **RECOMMENDATION AND ORDER**
ASTORIA CORPORATION, *et. al.*,        )
                                       )      **Motion to Enforce Settlement**
                          Defendants.  )      **Agreement - #50**
_____)

This matter is before the Court on Plaintiff's Motion to Enforce Settlement Agreement (#50), filed on March 24, 2011; Defendants' Opposition to Plaintiff's Motion to Enforce Settlement Agreement (#54), filed on April 20, 2011; and Plaintiff's Reply in Support of Motion to Enforce Settlement Agreement (#55), filed on May 2, 2011. The Court conducted a hearing in this matter on May 10, 2011. At that time, the Court indicated that it would recommend denial of Plaintiff's motion to enforce settlement, but would grant Plaintiff's alternative request for an extension of time in which to file a motion for summary judgment. The Court further stated that it would issue a written decision, which it now does.

**BACKGROUND**

Plaintiff seeks recovery of insurance premiums allegedly owed by Defendants. The insurance policy on which the premiums are allegedly owed was issued to Defendant Astoria Corporation, as the named insured. The other Defendants are partners or related entities to Astoria Corporation and were additional insureds on whose behalf Plaintiff defended and/or settled various construction defect claims. All of the Defendants are represented by the same counsel. Shortly after the Defendants filed their answer, the parties began discussing settlement. The settlement negotiations were eventually

predicated, in part, on the Defendants' assertion that they are unable to pay the amounts owed to

Plaintiff.  Plaintiff was willing, however, to settle the case in exchange for a stipulated judgment against

Defendants, without a promise by Defendants to actually pay the judgment or any guarantee that it

could be collected through execution.

Thus, on November 11, 2010, Plaintiff's counsel sent an email to Defendants' counsel stating:

> My client is willing to "settle" the case for a stipulated judgment against
> the defendants for the amount of $154,340.77, with interest to accrue post
> judgment at the legal rate.  This, of course, means that my client would be
> left to its wits to try to collect, but it does resolve the pending litigation
> issues.

*Motion (#50), Exhibit 1C.*

Defendants' counsel responded to this email on November 12, 2010, stating:

> This seems reasonable.  We've forwarded it to the clients for
> consideration.

*Id. Exhibit 1D.*

The parties' counsel subsequently engaged in communications regarding the postponement of

certain discovery.  In a December 29, 2010 email, Defendants' counsel stated:

> Also, to further the discussions on the settlement offer Steadfast
> proposed, we'd like to find out the character of the unpaid premiums.  For
> example, were they minimum premiums that were not paid or were they
> premium payments based on activity.  Please let us know and provide the
> breakdown if it varies.

*Id. Exhibit 1E.*

Defendants' counsel sent another email to Plaintiff's counsel on January 10, 2011 asking:

> Have you had any luck tracking down the character of the premiums?
> We're meeting with the client this morning and would like to be able to
> discuss resolution of matter.  Knowledge of the character of the premiums
> would potentially allow us to get this thing resolved.

*Id. Exhibit 1E.*

Plaintiff's counsel responded by email on January 10, 2011 as follows:

> Tye, the character of the premium is that, the amount owed is an adjusted
> premium.  The original premium on the Subguard policy (which insured
> virtually every Astoria development) was $799,063.  With this type of a
> policy, Steadfast sends auditors to worksites to determine the progress of
> construction and then they adjust the premium up or down, depending on

1
2
3

the progress.  Here the auditors adjusted the premium downward by $678,791 which left a premium owed of $120,072.  Then, there have been multiple claims on the policy with corresponding deductibles that Astoria has not paid.  I attach a 6.1.2010 invoice that shows the breakdown.

4

*Motion (#50), Exhibit 1E.*

5

Defendants' counsel responded by email on January 25, 2011, stating:

6
7

Astoria is on board with the stipulated judgment.  Please prepare and forward to us for review your proposed stipulation.

8

*Motion (#50), Exhibit 1F.*

9

A few minutes after receiving this email, Plaintiff's counsel replied stating:

10
11

Tye, that's good news.  We'll get to work, will file a notice of pending settlement, and hopefully can wrap this up quickly.

12

*Exhibit 1G.*

13
14
15

Further emails were exchanged between counsel on February 4th as to when the proposed stipulated judgment would be provided.  On February 10, 2011, Plaintiff's counsel sent Defendants' counsel an email stating:

16
17

Attached is the proposed judgment in this matter.  Please let us know if you have any suggestions or changes to the judgment.

18

*Id.*

19
20
21

The proposed stipulated judgment provided that each Defendant would be liable for the full amount of the judgment.  *Motion (#50), Exhibit 1G.*  Plaintiff's counsel sent a follow-up email to Defendants' counsel on February 17, 2011, stating:

22
23
24

I wanted to follow up to see if you have had the opportunity to review the proposed judgment in this matter.  Please let us know if you have any changes you would like us to make, or alternatively, if the judgment is acceptable to circulate for signature.

25

*Opposition (#54), Exhibit 1019.*

26

On March 10, 2011, Defendants' counsel sent the following email to Plaintiff's counsel:

27
28

Client is on board with the judgment.  The question the client has is whether the judgment amounts can be allocated in some way to the individual defendants.  We're told that some of the defendant entities had

> little or nothing to do with the insurance and didn't benefit from it while others were the main beneficiaries.  Further, client believes that if the shares are allocated, there is a greater potential for Steadfast to recover.  Please advise.

*Motion (#50), Exhibit 1H.*

Plaintiff's counsel responded to this email on March 10, 2011 as follows:

> Tye, I don't think we can allocate as opposed to just having a straight judgment.  Each of the defendants was an insured under the policy, so even if any particular defendant did not actually make a claim which another did, all are equally obligated for the premiums.

*Opposition (#54), Exhibit 1022.*

Defendants' counsel responded to this email on March 17, 2010.  Defendants' counsel also referenced a telephone call between the attorneys during the preceding week.  *Opposition (#54), Exhibit 1023.*  Defendants' counsel stated:

> We have yet to agree to get the partners on the JLTM and Astoria Homes entities to agree to the stipulated judgment for all parties.  Although we've explained the situation, they simply believe they shouldn't get stuck with all the other entities' bill.

> At the same time, our guy [an apparent reference to the principal of Astoria Corporation] isn't interested in continuing and being involved with the litigation after he enters a stipulated judgment for all the other entities.  He does not have funds floating around to pay for protracted litigation for claims that may be legitimate.

*Opposition (#54), Exhibit 1023.*

Defendants' counsel discussed possible alternatives to making each Defendant liable for the full amount in order to reach a final settlement agreement. *Id. Exhibit 1023.* Defendants' counsel sent a follow-up email on March 18, 2011 in which he asked Plaintiff's counsel to provide an explanation or justification for Plaintiff's contention that "all insureds are responsible for payment of all the amounts claimed." *Opposition (#54), Exhibit 1024.*

Plaintiff's counsel responded to these emails on March 18, 2011 as follows:

> Thanks Tye.  I'm taking my allocation proposal to my client.  As for paragraph 16(e) of the policy, that's why we included a claim for unjust enrichment in the complaint against the other insureds.

*Opposition (#54), Exhibit 1025.*

4

1           Six days later on March 24, 2011, Plaintiff filed the instant motion to enforce settlement

2    agreement.  In response to the filing of this motion, Defendants' counsel sent an email to Plaintiff's

3    counsel on March 18, 2011, stating:

4                   We thought you represented you were checking on the allocation so that
                    we could get some mutually agreeable terms?  Now a motion to enforce a
5                   settlement agreement?

6    *Opposition (#54),  Exhibit 1027*

7    Plaintiff's counsel responded on March 29, 2011 as follows:

8                   I did check.  The client instructed me to file a motion to enforce
                    settlement.  Feel free, however, to let me know your proposal on
9                   allocating the judgment.  Our position is that we have an enforceable
                    agreement to settle as is, however, my client will review your allocation
10                  proposal in an effort to forgo the pending motion practice should a new
                    agreement be reached.
11

12   *Opposition (#54), Exhibit 1028.*

13   **DISCUSSION**

14          A settlement agreement is a contract.  In order for an enforceable contract to exist, there must be

15   an offer and acceptance, meeting of the minds and, consideration.  Preliminary negotiations do not

16   constitute a binding contract unless the parties have agreed to all material terms.  A valid contract

17   cannot exist when material terms are lacking or are insufficiently certain and definite.  *May v.*

18   *Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005).

19          Based on the email exchanges between parties' counsel in this case, it is reasonably clear that

20   Plaintiff Steadfast Insurance Co. and Defendant Astoria Corporation reached agreement for a stipulated

21   judgment in the amount of $154,340.77.  *See* Defendants' counsel's January 25, 2011 email: "Astoria is

22   on board with the stipulated judgment." Motion (#50), Exhibit 1F.  It was apparently Plaintiff's

23   intention that each Defendant would be liable for the full amount of the judgment.  Plaintiff therefore

24   drafted and submitted the proposed stipulated judgment to Defendants' counsel in accordance with that

25   intention.  It does not appear, however, that Defendants' counsel or the principal of Defendant Astoria

26   Corporation had discussed or obtained the other Defendants' agreement to be bound by the full amount

27   of the proposed stipulated judgment.  When Defendants' counsel or the principal of Astoria

28   Corporation presented the proposed stipulated judgment to the other Defendants, they balked at being

liable for more than their alleged proportionate share of the premiums.  Whether the Defendants are legally liable for full amount of the premiums owed to the Plaintiff, or for only the portion of the premiums attributable to the individual claims against them, is not before the Court at this time.   Based on the record before the Court, however, there was no meeting of the minds between the parties that each Defendant (other than the named insured Defendant Astoria Corporation) would be liable for the full amount of the stipulated judgment.

Plaintiff nevertheless asserts that the alleged settlement agreement should be enforced because allocation of the amount of each Defendant's liability is not a material term.  The Court disagrees.  The absence of a meeting of the minds regarding the amount of each Defendant's liability is clearly an essential term, unless the amount at issue is *de minimis.*  Such is not the case here.  Accordingly,

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Plaintiff's Motion to Enforce Settlement Agreement (#50) be **denied** in regard to Plaintiff's request that the Court enforce a settlement between Plaintiff and all of the Defendants.

## **ORDER**

**IT IS HEREBY ORDERED** that Plaintiff's alternative request for an extension of time to prepare and file a motion for summary judgment is **granted**.  Plaintiff shall file its motion for summary judgment on or before **August 1, 2011**.  The joint pretrial order, if necessary, shall be filed within 30 days after the Court decides all dispositive motions.

## **NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual . . .

. . .

6

issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 17th day of June, 2011.

GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE

7